[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-16079

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 20, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-14217-CV-DMM
BKCY. No. 03-31318-SH

In Re:  VICTOR VEROLA,

Debtor.

_____

BRUCE H. COLTON,
State Attorney,

Plaintiff-Appellee,

versus

VICTOR VEROLA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 20, 2006)**

Before BIRCH and MARCUS, Circuit Judges, and MILLS[*], District Judge.

PER CURIAM:

Defendant-appellant, Victor Verola, appeals an order of the district court reversing the bankruptcy court's decision that the restitution obligation arising from his Florida conviction for fraudulent transactions was dischargeable under Chapter 7 of the Bankruptcy Code ("Code"). This appeal requires us to consider whether the Supreme Court's decision in Kelly v. Robinson[1] is still valid following both the Bankruptcy Reform Act of 1994 and the Supreme Court's decision in Pennsylvania Department of Public Welfare v. Davenport.[2] Because we find that it is and that the district court did not err in failing to follow the analysis employed by the Seventh and Third circuits in determining whether restitution is being paid "to and for the benefit of a government unit" for the purposes of 11 U.S.C. § 523(a)(7), we AFFIRM.

## I. BACKGROUND

The facts underlying this appeal are not in dispute. In November 2001, the Nineteenth Judicial Circuit Court, Saint Lucie County, Florida, adjudged Verola

---

[*]Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

[1]479 U.S. 36, 107 S. Ct. 353 (1986)

[2]495 U.S. 552, 110 S. Ct. 2126 (1990)

guilty of fraudulent transactions made between 1994 and 1998, in violation of Fla. Stat. § 517.301(1)(a) (2001). R1-7, Exh. 3 at 1. He was sentenced to thirty-four months in prison. On 6 December 2001, he stipulated to and was ordered to pay $2,538,557.05 in restitution as a condition of ten years probation. Id., Exh. 2 at 1. According to the restitution order, Verola was to pay the total amount of restitution "through the Department of Corrections, with an additional 4% fee for handling, processing, and forwarding said restitution to the victims(s)." Id.

Verola had previously filed for bankruptcy in March 2000 and, in October 2002, he sought a determination of the dischargeability of his restitution obligation under 11 U.S.C. § 523(a)(7). The bankruptcy court granted summary judgment in favor of Verola and found the restitution obligation dischargeable. The court explained that, because the restitution order made it clear that the money, although it was to be collected by the Department of Corrections, was then to be forwarded to the victims, the second requirement for excepting a debt from discharge – that the debt be "payable to and for the benefit of a governmental unit" – was left unsatisfied. See § 523(a)(7). The district court reversed and concluded that the Supreme Court's opinion in Kelly made clear that all state-imposed criminal restitution obligations meet the requirements prescribed by § 523(a)(7) and, thus, are not dischargeable.

3

On appeal, Verola argues that the district court erred in finding the restitution obligation nondischargeable.  In so arguing, he asserts that (1) the Supreme Court's decision in Davenport "abrogated" its decision in Kelly;  (2) the 1994 amendments to the Bankruptcy Code effectively preempted the Supreme Court's ruling in Kelly; and (3) the district court erred in failing to follow the test set out by the Seventh and Third Circuits for determining whether restitution is "payable to and for the benefit of a government unit" for the purposes of § 523(a)(7).

**II. DISCUSSION**

"We review legal conclusions by either the bankruptcy court or the district court de novo."  In re the New Power Co., 438 F.3d 1113, 1117 (11th Cir. 2006).  Title 11 U.S.C. § 523(a)(7) excepts from bankruptcy discharge a debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss."  In Kelly, the Supreme Court "h[e]ld that § 523(a)(7) preserves from discharge any condition a state criminal court imposes as part of a criminal sentence."  Kelly, 479 U.S. at 50, 107 S. Ct. at 361.  More specifically, the Court "conclude[d] that restitution orders imposed in [criminal] proceedings operate 'for the benefit of' the State.  Similarly, they are not assessed 'for . . . compensation' of the victim."  Id. at 53,

4

107 S. Ct. at 363 (omission in original). Thus, the Court found that restitution obligations imposed by states as part of criminal sentences were not dischargeable in a Chapter 7 proceeding.

Verola's restitution obligation is exactly that. Verola nevertheless argues that his restitution obligation should be discharged because (1) Kelly is no longer binding precedent and (2) his restitution obligation does not meet the second requirement that the restitution be payable "to and for the benefit of a government unit," even under Kelly.

A. Kelly

1. Effect of Davenport

Verola asserts that the Supreme Court's opinion in Davenport essentially abrogated its ruling in Kelly. In Davenport, the Court addressed an attempt by a Chapter 13 debtor to have a state-court-imposed criminal restitution order discharged. 495 U.S. at 556, 110 S. Ct. at 2129. The Court held that such "restitution orders [were] 'debts' as defined by § 101(11) [of the Bankruptcy Code]," making them subject to dischargeability analysis under § 523(a). Id. at 555, 110 S. Ct. at 2129 (alteration omitted). The Court concluded that, because the particular "exception to discharge relied on in Kelly [(§ 523(a)(7)) did] not extend to Chapter 13," restitution obligations were dischargeable thereunder. Id.

5

Although the Court in Davenport arguably reversed dicta in Kelly expressing doubt over whether Congress intended to include restitution orders in the category of "debts" for purposes of the Code, it did not question the general holding that state-court-imposed restitution obligations are not dischargeable under § 523(a)(7).[3] Nor did it shake the underlying motivating principle that "federal bankruptcy courts should not invalidate the results of state criminal proceedings [because t]he right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States." Kelly, 479 U.S. at 47, 107 S. Ct. at 360.

Accordingly, we find that the opinion in Davenport, particularly in light of the fact that Congress soon thereafter amended the Bankruptcy Code to overrule the decision by specifically making criminal restitution obligations non-dischargeable under Chapter 13 as well,[4] had no effect relevant to this case on the Court's holding in Kelly.

2. Effect of 1994 Amendments

---

[3]The Court in Kelly admitted "hav[ing] serious doubts whether Congress intended to make criminal penalties 'debts' within the meaning of § 101(4)" of the Bankruptcy Code, but concluded that it "need not address that question" because its holding was based upon § 523(a)(7). Kelly, 479 U.S. at 50, 107 S. Ct. at 361.

[4]Title 11 U.S.C. § 1328(a)(3), which made state-court-imposed criminal restitution orders dischargeable under Chapter 13, was added to the Code in reaction to the Davenport decision by way of the Criminal Victims Protection Act of 1990. See In re Clark, 222 B.R. 114, 119 (Bankr. N.D. Ohio 1997) (citing S. Rep. No. 101-434, reprinted in 1990 U.S.C.C.A.N. 405, 4071; H.R. Rep. No. 101-681(I), reprinted in 1990 U.S.C.C.A.N. 472, 6571).

Verola also asserts that Congress's 1994 addition to the Code of 11 U.S.C. § 523(a)(13), which exempts from discharge restitution obligations imposed under title 18 of the United States Code, effectively changed the meaning of § 523(a)(7) because Congress did not take the opportunity explicitly to add an exemption for state-imposed restitution obligations under Chapter 7. He makes a similar argument with respect to Congress's earlier addition of 11 U.S.C. § 1328(a)(3).[5] As has been observed by the Seventh Circuit, "[i]f Congress wants to supercede the Supreme Court's decisions, it must amend the statute the Court has construed; continuity of text equals continuity of meaning." In re Towers, 162 F.3d 952, 954 (7th Cir. 1998). To the contrary of Verola's argument, we find that the 1994 amendments to the Code reflect, if anything, Congressional approval of the result reached by the Court in Kelly.

B. "Payable" Test

Finally, Verola challenges the district court's refusal to follow the analysis employed by the Seventh and Third Circuits regarding the second prong of § 523(a)(7). The courts in both cases pointed out that Kelly involved a restitution

_____

[5]We note Verola's argument in apparent reliance upon the doctrine of *expressio unius est exclusio alterius* might have had more force had all three provisions been drafted at once, as opposed to the provisions specifically protecting federal restitution orders and criminal restitution orders under Chapter 13 having been drafted after the Court's ruling in Kelly had already explicitly extended the protection of § 523(a)(7) to state criminal restitution obligations under Chapter 7.

7

order under which a "governmental unit kept the restitution," because "the state was itself the victim." Towers, 162 F.3d at 955; see In re Rashid, 210 F.3d 201, 207 (3d Cir. 2000) (per curiam). Both courts rejected the argument that restitution paid to a private victim is still paid for the benefit of the government by way of its deterrent effect and concluded that the restitution orders in their cases were not excepted from discharge under § 523(a)(7) because the "the context in which the word '"benefit" appears – "payable to and for the benefit of a governmental unit" – implies that the "benefit" in question is the benefit of the money that is "payable to" the governmental unit.'" Rashid, 210 F.3d at 208 (quoting Towers, 162 F.3d at 956).

We do not find this approach to be applicable to Verola's restitution order. First, both circuit cases may be easily distinguished from this case. Towers concerns the dischargeability of a state civil restitution order. Towers, 162 F.3d at 953. Rashid addresses the dischargeability of a federal criminal restitution order. Rashid, 210 F.3d at 203. As noted by the court in Rashid, "Federal criminal restitution orders and civil restitution orders share one important distinction from Kelly – neither implicates the federal court's longstanding 'reluctan[ce] to interpret federal bankruptcy statutes to remit state criminal judgements.'" Id. at 208 n.3 (quoting Kelly, 479 U.S. at 44, 107 S. Ct. at 353) (alteration in original). Second,

8

despite the fact that <u>Kelly</u> involved a restitution order in which the victim was a government entity, the Court generally held that "§ 523(a)(7) preserves from discharge <u>any</u> condition a state criminal court imposes as part of a criminal sentence." <u>Kelly</u>, 479 U.S. at 50, 107 S. Ct. at 361 (emphasis added). To the extent the distinction between restitution orders does not, in each case, explain the different approach taken, the analysis employed in <u>Towers</u> and <u>Rashid</u> directly conflicts with <u>Kelly</u>.[6] Because <u>Kelly</u> remains binding Supreme Court precedent, the district court did not err in failing to employ the analysis suggested by <u>Towers</u> and <u>Rashid</u>.

### III. CONCLUSION

Verola appeals the district court's reversal of the bankruptcy court's decision that his state-court-imposed criminal restitution obligation was dischargeable in his Chapter 7 bankruptcy proceedings. Because the Supreme Court's holding in <u>Kelly</u>, that § 523(a)(7) makes all state-imposed criminal restitution obligations non-dischargeable, is still the law of the land, we **AFFIRM**.

---

[6]The Third Circuit itself recognized this tension. <u>See</u> <u>In re Thompson</u>, 418 F.3d 362, 368 (3d Cir. 2005) (distinguishing <u>Towers</u> and <u>Rashid</u> and stating that "[n]otwithstanding that in practical terms [the debtor's] restitution payments are 'payable to' [an individual], <u>Kelly</u> dictates that we not interfere with [the state's] criminal restitution order.").